GREEN, J.
delivered the opinion of the court.
This bill is filed to set up a resulting trust. It is alledged, that Jesse Balentine was the owner of a negro girl, Emeline; that the defendant Charles Balentine (who was his father-in-law) took this, girl into his possession and sold her, and vested the prpceeds in the tract of land in question, taking the title in his own name. Jesse Balentine conveyed the land to complainants. The answer denies that the land was purchased for Jesse Balentine, or that it was paid for with his money. The doctrine, that when a man buys land in the name of another and pays the consideration money, the land will be held by the grantee in trust for the person who pays the consideration money, is too firmly established now to be questioned. 2 Story’s Eq. Juris, s. 1201.
If, therefore, it were to appear from the proof in this cause, that the money of Jesse Balentine was paid for this land, it would belong to him in equity, notwithstanding the title was taken to Charles Balentine. It is insisted for the complainant, that Kimbro and Currin prove that Jesse Balenline’s money was paid for the land. Mr. Kimbro says,- that he was asking Charles Balentine in relation to the circumstances of Jesse, who was indebted to him: “He said that he was now in a better situation than he had been; that he had given him a negro girl; and finding him insolvent and in debt, he had taken the girl and had sold her, and purchased a piece of land for him and taken the title in his own name. He thought that Jesse Balen-tine was in a better situation to pay his debts, because he could work the land and make something to pay his debts.”
Mr. Currin says that he had a conversation with Charles Bal-entine in 1832, when he said he had given Jesse Balentine a girl, and that he had sold the girl, and from the sale had paid himself seventy odd dollars, “and with the balance of the money he intended to purchase a place as a home for Lydia (Jesse Balentine’s wife) and her children.”
Witness sold the land to Mr. Charles Balentine and made the title to him, and he gave his notes for the money. This is all the evidence in relation to the payment for the land.
*235 When the defendant conversed with Mr. Currin, the land had not been purchased, although he had before that time sold the negro. He said he intended to purchase a place for Lydia and her children. The purchase was made and notes were given for the money. This evidence does not tend to prove that the notes which were given for the land,-were discharged by the payment of the money he had received for Emeline. Indeed it rather proves the contrary, for as the negro had been sold and the money received before the purchase of the land, if he had intended to pay that money for the land, it would have been most natural for him to have paid it down at the time of the purchase.
The fact that he gave his notes for the purchase money of the land, is evidence that he applied the money which had been received for the negro to some other use.
He would hardly have kept it by him to discharge the notes, when it would have been so much more natural to have paid it in the first instance. As to Kimbro’s evidence, he only says that the defendant stated he had sold Jesse’s negro girl and had purchased a piece of land for him. He does not say he had purchased the land with the money for which he had sold the girl. And although we might infer this to be his meaning from this deposition alone; yet, when coupled with C'urrin’s deposition, from which it appears that the girl had been sold and the money received before the land was purchased, and that he gave his notes for the land, we are not permitted to extend the meaning of Kimbro’s deposition beyond the plain sense of the language.
But if the money of Jesse Balentine was not paid for the land, no resulting trust can be raised in his favor, although Charles Balentine may have been his debtor, and may have intended the land for him in discharge of that debt, for (as has been said) that would be in the teeth of the statute of frauds. 2 Story’s Eq. Juris, s. 1201; Bartlett & Pickergill; 1 Eden’s R. 22, 24.
The negro had belonged to Charles Balentine, and had been put in possession of his daughter in 1830, when she was married. There is proof from members of the family, that he had *236 never regarded this as a gift of the girl to Jesse, having always intended her for the use of his daughter and her children.
One witness, R. H. Hite, states that the old man said the girl was sent for the accommodation of his daughter. The witness also states, the old man hired the girl to Jesse two or three years and took his notes for the hire.
Now, although the defendant said to Mr. Currin., that he intended the girl for Jesse, and thought she would be liable for his debts yet it is evident that he took her away under a claim of right in himself. In selling her, he did not act for Jesse, but for himself; and he intended to make a provision for his daughter, which he regarded as more suitable.
Although the court may think, with defendant, that the girl would have been liable for Jesse’s debts, yet this view of his feelings and opinions goes to show that he would use the money he received for the girl as his own, and pay for the land from his own funds when the notes fell due.
It may also be well questioned, whether if a father, or other person, take into his possession the property of another acting under a claim of right in himself, and sell such property, vesting the proceeds in land, a trust would result in favor of the true owner of the property so taken.
The taking would be a conversion, and the money arising from the sale of such property would belong to the wrong doer, and he would be answerable in damages to the true owner. Upon the whole, here is a case where the trust is expressly denied in the answer, and if proved at all, but vaguely proved, by one 'witness only, without corroborating circumstances. It cannot, therefore, be set up in favor of these complainants.
We think the decree dismissing the complainant’s bill should be affirmed. But the court decreed also, that the deed from Jesse Balentine to the complainants, should be cancelled. This, we think, could not be done, in the situation in which the case stands, Charles Balentine having filed no cross bill asking to have that deed, as a cloud upon his title, removed.
The decree will, therefore, be reformed, in this particular.